IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| WILLIAM WHITTINGTON ROBERTS, § | |
| TDCJ-CID NO. 121931, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. V-10-037 |
| § | |
| THE FERGUSON UNIT, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

William Whittington Roberts, a convicted felon formerly incarcerated at the TDCJ-CID Ferguson Unit, filed a civil rights complaint concerning his treatment at the Ferguson Unit and at the Boyd Unit. Roberts also complains about the Texas appellate courts' handling of the appeal of his state court criminal judgment. He requests a transfer to another unit and restoration of his classification (Docket Entry No. 1 at 4). He also seeks intervention by this court in the state criminal proceedings against him as well as the broad conspiracy against him (Docket Entry No. 1-2 at 1).

### I. Procedural History

The original complaint was filed in the Austin Division of the Western District of Texas which severed the claims and transferred the complaint against the Boyd Unit to the Waco Division of the Western District where that Unit is located. *Roberts v. Boyd Unit*, No. 1:10cv0208 (W.D. Tex.) (*See* Docket Entry No. 3 of this proceeding). The Austin court then transferred the complaint against the Ferguson Unit to the Victoria Division where the court believed that unit is located.[1] *Id.* (Docket Entry No. 7). The Waco court dismissed the complaint against the Boyd Unit after having

---

[1] The Ferguson Unit is actually located in Madison County, Texas, which is in the Houston Division of the Southern District.

previously found that Roberts' complaints were frivolous because they were either conclusory or had failed to state a claim upon which relief could be granted. *Roberts v. Boyd Unit*, No. 6:10cv0101 (W.D. Tex. Jun. 17, 2010).

## II. Facts, Claims, and Allegations

Roberts is serving a seven year sentence pursuant to a conviction for fraud. *State v. Roberts*, No. D-1-DC-07-206717 (403rd Dist. Ct., Travis County, Tex., Nov. 9, 2007). Roberts states that his problems stem from his illegal conviction (Docket Entry No. 1 at 4). He alleges that the 403rd District Court has used TDCJ-CID to hide him and prevent him from defending himself legally. Roberts also claims that he has been confined to his cell for eighteen months and that he has been relegated to such a low custody level that he is unable to accrue any good time for an early parole. Roberts contends that he has been subjected to threats from gang members at Ferguson who believe that he is a "narc" or informer. *Id.* at 7. He alleges that he filed a Life Endangerment Report in 2008 and was placed in medium custody although he was assigned to work in the field allegedly in violation of his medical restrictions due to a bad back. *Id.* at 8. Roberts states that he worked in the fields for only a day before he was sent in and confined for thirty days after being charged with a disciplinary case. He complains about being treated unfairly despite the fact that he is not a disruptive inmate. He specifically alleges that he has been denied access to the law library and access to medical care.

Roberts goes on to complain about the way his criminal case has been handled in the Texas Courts (Docket Entry No. 1-1 at 1). He alleges that he was wrongly charged with attempting to obtain a controlled substance when he was actually trying to seek medical attention at the St. David's and Seton hospitals in Austin. He claims he appealed but that the Court of Appeals for the

Third District of Texas will not intervene despite his filing of a motion for a writ of mandamus after a two year delay in the proceedings. Roberts complains that his appellate attorney will not answer his correspondence.

A factual record of Roberts' fraud conviction would be helpful in understanding Roberts' complaint. Roberts was charged with knowingly attempting to obtain narcotics from two hospitals by giving false information. *Roberts v. State*, No. 03–08-00345-CR, 2010 WL 1253564 (Tex. App. – Austin, Apr. 1, 2010). The appellate opinion reveals that he visited St. David's Hospital complaining of testicular pain. *Id.* at 1. He gave a false name and date of birth and claimed that he did not have any identification. *Id.* Despite this, the hospital began treating him until a nurse found track marks on his arms. When a doctor asked what happened, Roberts answered, "I don't use drugs." *Id.* Becoming suspicious, the doctor pursued the matter further, and Roberts eventually confessed that he was a heroin addict. When the doctor suggested consultation to help Roberts with his drug problem, Roberts tried to "bargain for medication" which the doctor denied. *Id.* Roberts then left the hospital.

Roberts arrived at Seton Hospital approximately thirty minutes later where he complained of a tooth ache, and he gave a different name and birth date. *Id.* at 2. Although the doctor at Seton observed that Roberts had a guarded affect and did not have any identification, he gave Roberts a prescription for Vicodin after he gave his real name. Roberts quickly discharged himself after getting the prescription. Soon afterwards, a paramedic[2] told the doctor that he had seen Roberts registering at another hospital under a different name. 2010 WL 1253564 at *2. The doctor then cancelled the prescription and sent a police officer to apprehend Roberts who was reported to have

---

[2] The paramedic was actually the EMT who had transported Roberts to Seton. *See* Docket Entry No. 1-1 at 6.

been seen at the Seton pharmacy. The officer confronted Roberts who gave him his correct name and birth date. It was then discovered that Roberts had an outstanding warrant out of Dallas County for a probation violation. It was also discovered that Roberts had registered at Seton using the name William Whittington with a birth date that was clearly not his own. *Id.* When confronted with this, Roberts stated that he had nothing further to say. Further investigation revealed Roberts had previously registered at Seton using false birth dates and social security numbers on three different occasions.

Roberts contends in the current civil rights proceeding that he left St. David's because the doctor there was very insensitive and refused to give him any medication for his testicular pain and "possible dependence to pain medication" (Docket Entry No. 1-1 at 4). He claims that he then went to Seton for treatment of a tooth injury. Roberts alleges that there was a clerical error made at registration and that the attendant forgot to put his full name on the register, implying that the false name was actually a mistake. *Id.* Roberts also contends that the police officer at the hospital wrongly obtained his medical records and spoke to the doctors at St. David's and Seton in violation of the "Health Information Privacy and Portability Act."[3] *Id.* at 5. He argues that the trial court should have inquired into how the police officer acquired the protected information and should not have seized his private medical records.

Roberts declares that the medical community and the legal community conspired to hide his privacy violations (Docket Entry No. 1-1 at 3). He complains that the 403rd District Court violated his right to privacy by allowing the police officer to take his medical records without a warrant and that the court seized his records in order to cover up the intrusion. Roberts also contends that the

---

[3] Roberts is probably referring to the Health Insurance Portability and Accountability Act of 1996.

seizure of his medical records denied him the right to a fair trial. Roberts further claims that the prosecutor and his defense counsel were working with the hospitals to deny him his records. (Docket Entry No. 1-1 at 7). He contends that he has no alternative but to file a writ of mandamus with this court concerning the conspiracy against him by the courts, the hospitals, and the TDCJ-CID (Docket Entry No. 1-2 at 1).

### III. Analysis

Roberts' pleading will be analyzed as a civil rights complaint under 42 U.S.C. § 1983 as his purported mandamus application has no legal basis because it is evident that he is not clearly entitled to the relief requested. *In re Willy*, 831 F.2d 545, 549 (5th Cir. 1987). Although Roberts believes that his complaint concerns related issues, there are actually two complaints which are only tied together by a plaintiff who is borderline delusional and who believes that he is a victim of a vast network of officials and doctors who want to deny him drugs and send him to jail. In one complaint, Roberts challenges the validity of a criminal conviction. If he were seeking monetary damages, he would be barred by *Heck v. Humphrey*, 114 S.Ct. 2364, 2372 (1994). Instead, he seeks this court's intervention in the state court proceedings. Absent extraordinary circumstances, the federal courts abstain from doing this. *DeSpain v. Johnston*, 731 F.2d 1171, 1175-76 (5th Cir. 1984). Moreover, Roberts's appeal has been affirmed by the Third Court of Appeals in Austin. *Roberts*, 2010 WL 1253564. No petition for discretionary review was filed although an extension had been granted. *Roberts v. State*, No. PD-0507-10. A state application for a writ of habeas corpus was denied. *Ex parte Roberts,* No. 72,829-03 (Tex. Crim. App. May 18, 2011). Roberts' next step would be to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 93 S.Ct. 1827, 1833 (1973). Venue for such a proceeding would be either in the district where he was

convicted or the district where he is currently incarcerated. 28 U.S.C. § 2241(d). Roberts was convicted in Austin, which is in the Western District of Texas. TDCJ-CID records reveal that Roberts is currently at the Michael Unit in Anderson County, Texas. *See* TDCJ-CID website, http://offender.tdcj.state.tx.us/POSdb2/index.jsp. Anderson County is in the Eastern District of Texas. Therefore, Roberts' challenge to the state criminal conviction is subject to dismissal in this civil rights proceeding without prejudice to him seeking federal habeas relief in either the Western or Eastern District of Texas. *See McElveen*, 101 F.3d 423, 424 (5th Cir. 1996), *citing*, *Serio v. Members of La. Bd. of Pardons*, 821 F.2d 1112 (5th Cir. 1987).

Roberts' other complaint in this proceeding concerns his conditions of confinement at the Ferguson Unit. Roberts alleges that he is a victim of some vague conspiracy but he fails to assert facts which show that a conspiracy really exists which has violated his constitutional rights. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Roberts states that he has been denied access to a law library, but he does not state any case that he was working on which was impeded by such a denial. He does not have a free standing right to use a library and can only assert a constitutional violation if he can show that his litigation efforts were harmed. *Lewis v. Casey*, 116 S.Ct. 2174, 2180 (1996). As indicated above, Roberts had the benefit of a direct appeal as well as a post-conviction habeas application in which he had the opportunity to challenge the state court judgment against him. In light of the pleadings filed in Roberts' behalf, there is no showing that he is entitled to relief regarding denial of access to the courts. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988).

Roberts complains about being denied access to medical care; however, he presents no facts which indicate that he has been harmed by any alleged denial nor has he presented any specific

instance demonstrating that any official has been deliberately indifferent to his serious health needs. The opinion issued by the Third Court of Appeals reveals Roberts' drug seeking behavior as well as his tendency to try to deceive and manipulate doctors and nurses. *See Roberts*, 2010 WL 1253564, at \*\*1-2. Any disagreement Roberts may have had with health care workers and other officials working at TDCJ-CID concerning his medical treatment would not support a claim that he was denied medical care. *Banuelos*, 41 F.3d at 235, *citing Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Construed liberally, Roberts' complaint about being placed in the fields despite having a bad back might indicate a constitutional claim if prison officials knowingly made him do work which put him at risk of injury. *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989). However, Roberts admits that he only worked one day, and he does not allege any serious injury. Such a brief stint would not support an actionable claim. *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001), *citing Jackson,* at 1246.

Roberts complains about the trouble that he has gotten into and how it has affected his chances for an early release. Such claims may not be pursued in a civil rights proceeding to the extent that they challenge the validity of the length of a prisoner's confinement. *Edwards v. Balisok*, 117 S.Ct. 1584, 1589 (1997), *citing Heck.* If Roberts believes that he has been wrongly disciplined and that the action taken against him has delayed his release, he must file a petition for a writ of habeas corpus if he has properly exhausted his available administrative remedies. *Kennedy v. State of Texas Pardons and Paroles*, 136 Fed.Appx. 712, 713 (5th Cir. 2005), *citing Wilkinson v. Dotson*, 125 S.Ct. 1242, 1247 (2005).

Roberts' complaints about his classification and restrictive custody have no basis in law because they are not atypical departures from the normal conditions of prison life. *Sandin v.*

*Conner*, 484, 115 S.Ct. 2293, 2300 (1995). Roberts does not have a constitutional right to be comfortable in prison, and he is subject to the will of the custodial officials there. *Rhodes v. Chapman*, 101 S.Ct. 2392, 2400 (1981). If his demotion has cost him the ability to earn good-time credits, he has no actionable claim because he has no right to a particular status. *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000). Therefore, his request for restoration of his classification shall be denied.

Finally, Roberts has been transferred to another unit and is no longer incarcerated at the Ferguson Unit or at Boyd Unit. Roberts's transfer moots his request to be moved to another unit. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991).

Roberts filed an application to proceed in forma pauperis in this action. The court will grant Roberts permission to proceed as a pauper. An *in forma pauperis* complaint may be dismissed if it is frivolous  28 U.S.C. § 1915(e)(2)(B)(I). Such a complaint is frivolous if it lacks an arguable basis in law. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). This complaint will be dismissed because it is frivolous.

The Application to Proceed In Forma Pauperis (Docket Entry No. 5) shall be granted. No initial partial filing is assessed because Roberts had not received any funds for a six month period before filing the application. *See* 28 U.S.C. § 1915((b)(1)(A). However, Roberts shall pay the entire filing fee ($ 350.00) as soon as funds become available. 28 U.S.C. § 1915(b). The TDCJ Inmate Trust Fund shall withdraw the initial partial filing fee from Roberts's inmate trust account and deduct 20% of each deposit made to the account and forward the funds to the Clerk on a regular basis, in compliance with the provisions of 28 U.S.C. § 1915(b)(2), until the entire filing fee

($350.00) has been paid.

### IV. Conclusion

The court **ORDERS** the following:

1. This complaint filed by Inmate William Whittington Roberts, TDCJ-CID No. 1503850, is **DISMISSED** because it is frivolous. 28 U.S.C. § 1915(e)(2). This dismissal is with prejudice to all claims other than those relating to the validity of Roberts' confinement which may be pursued through a habeas proceeding.

2. The Application to Proceed In Forma Pauperis (Docket Entry No. 5) is **GRANTED** and Roberts shall pay the fee in accordance with the terms of this Memorandum Opinion and Order.

3. The TDCJ Inmate Trust Fund is **ORDERED** to deduct funds from Roberts' inmate trust account and forward them to the Clerk on a regular basis, in compliance with the provisions of 28 U.S.C. § 1915(b) and the terms of this Memorandum Opinion and Order, until the entire filing fee ($ 350.00) has been paid.

4. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax Number 936-437-4793; and the Pro Se Clerk, United States District Court, Eastern District of Texas, Tyler Division, 2ll West Ferguson, Tyler, Texas  75702.

**SIGNED** on this 31st day of August, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE